Newman, appearing for Mr. Jari. I'd like to focus on the Booker issue this morning, and I'd like to begin with the 3553A factors. The case law is still quite inconclusive on how the district courts have to consider the 3553A factors, but there is some case law that talks about ways, at least in which a district court can go wrong, and that is that a district court cannot go wrong in considering those factors. I'm thinking specifically of the Hock case from the Eighth Circuit, which lists a number of ways in which a district court cannot fulfill its duty in considering the 3553A factors. It can fail to consider a relevant factor that deserved weight. It can give significant weight to a factor that was improper, or it can weigh all the correct factors, but commit a clear error in judgment in doing so. And I would submit that the district court in this case made several of those errors. In fact, I think it made all of those errors. Let me begin with Mr. Jari's prior convictions. I think that the way in which the district court considered this factor both failed to give weight to a factor that deserved weight and also considered an improper factor, because what the district court here did was to look at this middle-aged man, Mr. Jari was 55 at the time of sentencing, with no prior criminal convictions whatsoever, so more than 30 years of a life in which he had suffered no convictions, and to say that not only did that not matter, but that it wasn't even true. He's the district court believed that Mr. Jari had committed a full life of crime and had simply never been caught. So the sentence here was based on the fact that he had committed a full life of crime. And that's all you really have. I would respectfully disagree with that, Your Honor, because the 3553a factors one of the 3553a1 talks about the history and characteristics of the defendant. And it's not just a negative inference that Mr. Jari had a really engaged in a life of crime. It's also failing to give weight to a factor that really deserved weight, which was that here was a middle-aged man with no convictions, which makes him different, which is not only significant in itself, but also makes him different from someone who might be 19 years old with no adult convictions. It shows that he had more than 30, well, 25 or so, 30 years or so, of a life in which he had been law-abiding. Well, just from a pure abstract standpoint, literally what the judge said was true. Literally what the judge said was, while he's a first-time nonviolent offender, it's the first time he's caught. Right. Now, that is literally true. It is literally true that this was his first conviction. So now, all of your argument is based upon the negative inference, right? If that is asserted as a truth, and that's all that a person says, that is equal to saying, well, yeah, but he's been doing a lot of other things for which he has not been caught. Precisely. And we can draw those conclusions in a lot of conversation, can we not? If the record supports that sort of thing. All right. But if you look at Mr. Jari's pre-sentence report, the record does not actually support that kind of inference. And also, Your Honor, I don't want to belabor the point, but it also fails to take into account that this really was his first conviction because it discounts that. You're not arguing that in looking at a defendant in his life history, that the only thing that can be considered as a matter of law is prior convictions, are you? Certainly not, Your Honor. Certainly not. But the court, the sentencing court really does have an obligation to look at a defendant's prior record. Did he not consider the guidelines, and did the guidelines not show that he had no prior convictions, he was in criminal history category 1? He was in criminal history category 1. And the judge did consider that? The judge said he considered that, yes, which brings us to the guidelines. Unless the judge lied, you're saying he did consider it? Oh, no, Your Honor. But the judge made some boilerplate statements about how he was considering the 3553A factors. And the sentence was at the low end of the guideline range, wasn't it? No, Your Honor. No? That was the low end of the guideline range if that range was correctly calculated. Correct. And so when you're saying that he didn't consider the fact that he had no priors, he at least did sentence him at the very low end of the range established with consideration of the fact that he had no priors. He did, Your Honor, but under Booker, the court was also entitled to consider that this was a man with a long history of no convictions, which makes him different from someone with a short history of no convictions. He was also entitled to consider that Mr. Jari's age made him less likely to recidivate. All of those things as well. And while what the Court's saying is true. Are you then telling us that it's always unreasonable for a judge to sentence an older person to perhaps what might be the same sentence as a younger person? Not at all, Your Honor. We have to be able to find this was unreasonable. Yes. Yes. And our argument, Your Honor, is that it was unreasonable to invent a history of prior bad acts on Mr. Jari's part that aren't supported by any record. Well, I don't want to belabor the point, but this invented history of a lifetime of crime is nothing more than a negative inference that you're drawing. Very well, then, Your Honor. Let me turn to the Court's comments about how this was a lenient sentence. The Court said that it was sentencing leniently because the government hadn't alleged more because it couldn't prove more. And to me, this suggests also that the Court was giving weight to an improper factor, because this is what the Court is basically saying here as I read it, is there's really bad stuff out here, and given that bad stuff, I'm giving you a break by sentencing you down here. But the Court, if there is no bad stuff out here because the government never alleged it and as the Court itself acknowledged couldn't prove it, then this is not a lenient sentence. And so once again, the Court is – I'm – okay. One second to see what he got, because he got 33 months, Your Honor. Once again, the Court is saying there's bad stuff out here and I'm considering you a really bad person when the record really doesn't support that inference outside of the facts of this offense. Then in it – Well, let me just – you want to save some time for rebuttal, but I was just trying to look at the pre-sentence report, and the pre-sentence report does indicate that he was directing people in this enterprise. Yes. Yeah. Okay. It does say that, yes. It doesn't indicate that he was some kind of minor person who was roped in by somebody else. No, Your Honor, it doesn't say that. The only issue as – well, there's an issue as to role in connection, I think, with the Rule 32 issue. But I would like to turn in the brief time I have to the Court's guideline calculation, since that has come up. The guideline – the advisory calculation with respect to loss. The Court said that 33 months was the bottom of what would have been the guideline mandatory sentence. But in order to believe that that's true, then the Court had to sentence Mr. Jarre based on a loss calculation that led to an 11-level enhancement. The defense had asked for a 5-level enhancement, so there's a 6-level enhancement that's in dispute here. And the Court didn't find that loss. It said clearly that the loss had not been proved beyond a reasonable doubt. It said that the government – first it said that it was questionable whether the government had proved it by clear and convincing, and then it said there's no way the government has proved it by clear and convincing later in the sentencing colloquy. And then it said it was questionable whether the government had proved it by a preponderance. And even if the Court believes that the standard in this case really is preponderance rather than something higher, a great deal higher, as we would argue, then the Court still didn't find it, because in order to believe – in order to sentence based on a preponderance, the Court has to be convinced that the fact exists, convinced by a preponderance of the evidence that the fact exists. And here the Court's only statement was, I think it's questionable whether they've proved it by a preponderance. And so that makes – that calls the whole advisory guideline range into question. It calls the Court's statement that it's sentencing at the bottom of that range into question, and it also requires remand under this Court's recent decision in U.S. v. Manyweather, which says that, of course, the district court has to accurately calculate the advisory guideline range. I see I have very little time left, so may I save it for rebuttal? Thank you. May I please the Court. Rebecca Lonergan for the United States. Turning first to the first argument that counsel has made, the test is reasonableness, clearly, under Booker, as to whether the sentence was reasonable. In looking at the totality of this record, the sentence was clearly reasonable, keeping in mind that this Court held a full evidentiary hearing, a cross-examination of the government's witnesses. Then at the end of the record, before the Court sentenced, if you look at the transcript pages 59 through 60, the district court stated specifically that it had considered the defendant's arguments, that it had determined and considered the advisory guidelines as recommended by both probation and the government. Counsel? Ma'am, where in the record can we find where Judge Hatter made a finding regarding the amount of the loss? It seems to me that Shari's lawyer is correct in suggesting that all he ever said is it's not proved beyond a reasonable doubt, it's not proved by clear and convincing evidence, and it might not even be proved by preponderance of the evidence. That's questionable. I think what happened, Your Honor, is that essentially the district court didn't like the government's argument, which was the government presented a witness, which was an agent, who testified that based on the statements of co-conspirators, co-schemers, that this defendant was responsible for 90 percent. Instead, though, what the Court found is if you look at the excerpt of record at page 56, the Court said at the beginning of the record that if he did not believe that this defendant would be able to prove that he was not jointly and severally liable for the entire loss amount, the hearing started with a stipulation that the false claims that had been submitted amounted to a total of 1.2 million. The district court started out the sentencing hearing looking at that stipulation and saying, why shouldn't I find him jointly and severally liable for that entire loss amount if, in fact, he set up this scheme? That's what the Court says at excerpt of record page 56. Then at excerpt of record page 89, the Court says towards the end of the sentencing hearing, it is undisputed at this point that this defendant set up this scheme. That's where the finding of loss comes in. The Court said early on, I'm going to find him jointly and severally liable for that entire stipulated 1.2 million if he set up this scheme. Then towards the end of the sentencing hearing, the Court found he set up the scheme. The Court, when it was making the statements about burden, there was argument by the parties, is the burden clear and convincing, is the burden preponderance. It was unclear what the burden was, and I think the district court in its statements didn't like the government's theory of loss calculation. It instead had its own, and it found that. So the 1.2 million wasn't the total loss. That was the 90 percent? No. 1.2 million was the total loss. But there's just this sort of out of thin air, and so 90 percent of it was fraudulent. Isn't there? I mean, did he ever make a finding that he believed that? It's the same guideline range. The government's loss number is 1.147 million, and that's the 90 percent number. But the 1.2 million, which was the total fraudulent. Just total billings, right? I'm sorry? Wasn't it just total billings, ma'am? 1.2 million was the total of fraudulent billings submitted by the DME company at issue here. But the guideline range is the same. The 11-level loss enhancement is the same, whether you take the government's loss number or the total 1.2 million. It doesn't affect the guideline. I'm still not clear. What was the amount that they actually billed? Was that the 1.2 million, and then the government's theory was 90 percent of that was fraudulent? Yes. All right. Now, what support is it? There's one person who testified as to the 90 percent, correct? Well, it was an agent who testified and offered hearsay testimony of the statements of a number of co-schemers cooperating witnesses, one of which was Lupe Laron, who worked in the office that submitted the bills, who said that 90 percent of what they submitted was fraudulent. And then there was the statements of both the owner of the DME company, Vasudeo, and another one of the co-schemers, that 95 percent of what they billed came from defendant Jari. But isn't that the thing that the judge, the trial judge, said he couldn't find beyond a reasonable doubt or by clear and convincing evidence, and he questioned whether he could find it by preponderance? Isn't that what he was talking about? Well, he said he couldn't find it beyond a reasonable doubt. He said he didn't think there was clear and convincing evidence. There's no actual finding whether it could be found to a preponderance or not. And after he said that he couldn't find it by clear and convincing, is when the government pointed out that under Ammaline, the en banc Ammaline, the third Ammaline decision, and Howard, the standard should be preponderance. The court then never made an explicit finding whether the government had proven the 90 percent to a preponderance. But again, if you look at the record, that's not where the court went in its loss calculation. It was finding joint and several for the entire loss amount. That's what, that's the way I read the transcript. But I, what the district, the district court goes, the real question in the district court's mind was, was the government was arguing that this fellow was the kingmaker that was responsible for the whole thing, you know, solely responsible for everything. And the district court seemed to be, maybe I'm wrong, but the district court seemed to be saying I don't buy that, but I would, if this were the good old days and I were just allowed to issue a sentence, I would put this near the maximum because I think he was very heavily involved and he just was seriously involved. There is a finding as to that, as to his kind of responsibility for the scheme in a way. Is there not? Or? Yes. The district court explicitly stated, it appears to be undisputed that he set up this scheme. And if you look at the excerpt of record, it's direct parallel at the beginning when he says, I would find joint and several liability if he set up this scheme. Then at the end of the sentencing hearing, he says, he set up this scheme. The combination of those two is the district court's finding that he's jointly and several liable for that entire loss amount. And it makes sense because then when the district court then says, despite the fact I don't like the government's proof, the low end of the mandatory guideline would be 33 months, he is in fact finding the range of 33 to 41 months. It's not a perfect record. It would be better if he had said, I don't like the government's proof, but I'm still going to find joint and several liability. He didn't. However, when you look at the totality of the record, you can discern what he was doing. Because as I said, at excerpt page 56, he says, if he set up this scheme, he's jointly and several liable for your stipulated amount, total amount. And then at the end of the sentencing hearing at excerpt of record page 89, he says, he set up the scheme. So that's where the government says that he, in fact, found loss. The trouble, I see four problems in this case that just make work out of all of this. We have equivocation on the burden of proof. It's problematical. You have to cobble together what the judge said here and there and the result to determine by inference that he applied the proper burden of proof. Then you have the argument that we heard about improper factors of considering this man's lack of record and so on. And then we have on top of that a failure to make explicit findings on things that were in dispute. And then we have the issue of allowing the probation officer to decide payment for future treatment. And with respect to the findings, when you say the judge concluded by saying it's undisputed, the defendant takes that to mean that you didn't understand we were disputing it. Now, that's a problem that I see in it. Instead of it being a finding, it's an assertion that it's undisputed. You interpret that to be a finding. The defendant interprets it to be a misunderstanding. Now, those are the problems I see here. Well, we have to patch together a whole bunch of inferences to come out one way or the other in this case. We can't look at anything very explicit. Now, you want to address each of those four? You've touched upon some of them already. I'm not asking you to repeat anything. First point that Your Honor raised is the burden of proof and whether he really was applying the proper burden of proof. It's the government's position that the proper burden of proof under the third Ameline en banc decision and Howard and the other circuits have agreed. And the 20HA that I submitted, this circuit recently assumed that the proper burden of proof is preponderance. If that is correct, which it is, then if the district court was uncertain which burden to apply, it's harmless because, in fact, the burden to be applied was the easiest burden, the lightest burden. Of necessity, he's right. So of necessity, he's correct. Turning to the second one, the explicitness of the findings, is that addressing the Rule 32 issue on the role findings or on the loss findings that Your Honor was concerned about? Both. Okay. On the loss findings, I've already articulated my argument. On the findings as to the role enhancement, well, it's well accepted that the court can rely on disputed facts of the PSR. So the first aspect of looking at that question under Rule 32 is what was disputed? Now, arguably, there are three things that are disputed here. In the position papers of the party, the defendant argued that there were three things he had not admitted. Now, he doesn't say that they're untrue. So it's really questionable, actually, whether that is disputing the truth of those facts because that really looks like an apprendee type of argument. I didn't admit these. But, okay, let's just assume that those three facts are being disputed by that statement. And, in fact, at the sentencing hearing, he did clearly dispute whether he managed the people that he had recruited. That's the one question that's clearly disputed at the sentencing hearing. But looking at the others, the factors that were raised in the sentencing papers were, did he recruit and manage others? Excerpt to record page 87, defense counsel concedes that he recruited others. So that leaves the managing question still out there. Put that aside for a second. Secondly, he disputed whether he instructed others how to operate the scheme. Well, the district court at the end said that he helped put together this scheme, quote unquote. So the district court did make a finding as to that. Thirdly, the question that he raised, which he said went to Roy, was whether he paid kickbacks to the doctors. That question is interesting because if you look at paragraph 60 of the pre-sentence report, which is the paragraph that discusses the facts that the no mention in that paragraph of paying kickbacks to the doctors. If you look at the sentencing transcript, the government never argued, probation never argued that the payment of kickbacks was relevant to the role adjustment, and it was never discussed as being relevant to the role adjustment. So when the defense raises that as relevant to role, no one ever argued that that supported role. So it's really an irrelevant factor to the role adjustment. That leaves in dispute only the question of whether he managed others. Now, when you look at Rule 32, the defense has relied extensively on Carter as the case saying that he's violated Rule 32 here. Carter is clearly distinguishable here. Carter is very specific on page 867 of Carter that there are eight different factors, very specific factors. Did he, in fact, give this check to a particular person? Did he, in fact, get a particular car for a particular courier? Did the defendant, in fact, rent a particular house that was used? Those are very specific. Six different paragraphs of the PSR are cited and eight different facts are cited. That is not at all like this case. In Carter, the district court said it had no way of knowing which disputed fact the court relied on. In this record, although not perfect, this court can tell what facts the district court relied on to find role. The district court relied on recruitment, which was conceded at sentencing, and the fact that this defendant had help put together this scheme. There's no reason to think the district court relied on the payment of kickbacks because no one ever even argued that. The PSR didn't say it. Rule 32 says that facts in the PSR that are disputed must be resolved. The PSR doesn't cite to recruitment. I mean, does not cite to, excuse me, kickbacks. So it's not a disputed fact from the PSR. So the only fact that remains somewhat in dispute is whether he, in fact, after he recruited all these people, after he showed them how to operate the scheme, he continued to manage them. Now, the court didn't explicitly rule on that, but from this record, one can tell what the district court was relying on. And I would point the courts to Rigby, Rogers, and Tam in particular as three cases on Rule 32, which are favorable to what the district court did here. In Rigby, this Court specifically held that although the defendant argued that he was a mere courier and the district court didn't specifically say, no, he's not a mere courier, this one could tell what the district court was relying on. Tam also ---- Time is more than expired. I'm sorry. I think we understood. I'm over. Thank you, Your Honor. Thank you. You can have a couple of minutes. Thanks, Your Honor. I'd like to address the joint and several liability question first. It's true that the district court did begin the sentencing hearing saying, why can't I just find joint and several liability? But the nature and quality of the government's proof, I think, puts paid to the district court's reliance on that theory, because the nature and quality of the government's proof during that sentencing hearing showed that a group of ---- showed that there was certainly a great deal of, or at least some percentage of the government's figure that it wanted to attribute to Mr. Jari that couldn't be attributed to Mr. Jari, because there were people who were also involved in the scheme who had no link to him. There were people whom he had admittedly perhaps recruited, but who then went on to do things by themselves. There were people who were also bringing in billings who were doing it cleanly in an upstanding, nondishonest way. There was a patient who became a recruiter, and the government could show no link to Mr. Jari. And so I think that the district court, far from saying jointly and severally liable if he set it up, abandoned that theory as soon as it heard the government's proof, and then was faced with the very question of how am I going to find this loss. And we would submit, as we've argued, that it did not find the loss beyond a reasonable doubt. It did not find loss by clear and convincing evidence, which is the lowest standard we would submit that it was required to use. And it said that it was questionable whether the loss could even be found by a preponderance, which distorts its guideline analysis and requires remand. Sotomayor, I'm sorry, Your Honor, what page is which on? Sotomayor, when he says that the loss can't be proved by? I think it's on page 100. And I think it would be I think it's 90. It's 107, I think, is where he says it's not found by clear and convincing. Is that the question? Right. It's a little earlier than that. 93. Possibly 86. Excuse me, Your Honor, may I get my outline? Yeah. Where it's not, where it's questionable, it's page 86 in the excerpt. That's questionable as to preponderance? Exactly, Your Honor. What the Court actually says there is, while I don't think it's fair to say there's no evidence, it's a question of whether it's a clear preponderance, it's a question whether it's clear and convincing, or indeed, I agree with you that it's certainly not beyond a reasonable doubt. That's fairly early in the argument about sentencing, and then at the conclusion of that argument, the Court decides that there's no way that the government proved loss by clear and convincing. And it says that at page 107, as the Court mentioned. And you think that based on United States v. Jordan and cases like that, we need clear and convincing here? I do, Your Honor. There was Mr. Jari was not charged with a conspiracy or convicted of one. The loss, the enhancement difference is six levels, and the difference in his sentence is a substantial one. More than double. More than double, yes. But you see, I have read this a couple of times, and that seems to go to this seems to go as to whether he was the kingpin or whether he was just one of the organizers. Well, I think that he says that, well, the government thinks that Mr. Jari is responsible. He's his kingpin. And then later he says, well, I didn't think the government was able, if I thought the government were able to prove that he was the kingpin, but they didn't. So I don't see where the allocation mattered, I guess, as to, as the burden of proof mattered, because on that issue, the district court didn't seem to accept it, didn't  I agree that the court clearly said he's not a kingmaker. If I thought he were, you'd really be looking at serious time. And so I can't see how the court decided loss at all, and therefore, I don't see how it decided its guideline issue. If the court could indulge me, I just wanted to talk for a moment about the explicitness issue in Rule 32. If you look at the question whether Mr. Jari actually didn't admit or explicitly denied that he had ever paid kickbacks to doctors, you'll see that at his change of plea, he explicitly denied that he had done so. And perhaps the sentencing papers weren't best phrased, but that was an explicit denial. It does go to whether he was an organizer of this scheme, because he would have had as an organizer, he would have to have done something to keep the doctors happy and keep the scheme running. And so it does go to the reasonableness of the organizer finding, and the court simply didn't make any explicit. The only thing on that now, counsel makes the argument that that assertion was never made in the pre-sentence report. It is on page, I think it's in paragraph 37 of the pre-sentence report, Your Honor. You say she's wrong on that. I think what counsel was saying was that it wasn't referenced with respect to the discussion of role in the offense. But it was stated in the pre-sentence report, and I think it's paragraph 37. Okay. The role in the offense discussion is around paragraph 60. All right. Thank you. Thank you, Your Honor. Thank you. Okay. The case just argued is submitted for decision. Will this counsel here in United States v. Cantor? All right. We'll
judges: Schroeder, Leavy, Sedwick